# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
FOLEY SQUARE

-------------------------------------------------------- X

Jeanne Bellino,                                    :

                    Plaintiff,          :          CIVIL ACTION NO. 1:24-CV-00712-LAK

                            :

      -against-                               :

Steven Victor Tallarico a/k/a Steven Tyler,   :

              Defendant.         :

                            :

                            :

-------------------------------------------------------- X

## __MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS__

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ...................................................................................................ii

I.     PRELIMINARY STATEMENT ................................................................................ 1

II.    BACKGROUND ...................................................................................................... 2

      A.   The Allegations of the Complaint.................................................................. 2

      B.   Forcible Touching.......................................................................................... 3

      C.   The VGMVPA .............................................................................................. 4

      D.   The Enactment of State Law Addressing Sexual Assault.............................. 5

III.   LEGAL ARGUMENT............................................................................................. 7

      A.   The Complaint Fails to State a Claim under the VGMVPA........................... 7

            1.   Legal Standard ................................................................................. 7

            2.   The VGMVPA Cannot be Applied Retroactively to a
                 Claim from 1975.............................................................................. 8

            3.   The Complaint Must be Dismissed as Untimely Because
                 the 2022 VGMVPA Amendment is Preempted by the
                 State's Sexual Assault Acts. ............................................................. 13

            4.   Plaintiff Also Independently Fails to Allege Facts
                 Plausibly Supporting a VGMVPA Claim.......................................... 16

IV.   CONCLUSION.................................................................................................... 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Jenkins,*
  115745/03, 2005 WL 6584554 (N.Y. Sup. Ct. Apr. 22, 2005)................................9

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)................................................7, 8

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007)................................................7, 8

*Breest v. Haggis,*
  180 A.D.3d 83 (N.Y. 1st Dep't 2019)................................17

*Collins v. Youngblood,*
  497 U.S. 37 (1990)................................................10

*Cordero v. Epstein,*
  22 Misc. 3d 161, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008)................17

*DJL Rest. Corp. v City of New York,*
  96 N.Y.2d 91 (N.Y. 2001)................................................14

*Doe v. Gooding,*
  No. 20-CV-06569 (PAC), 2022 WL 1104750 (S.D.N.Y. Apr. 13, 2022)................15

*Eastern Enterprises v. Apfel,*
  524 U.S. 498 (1998)................................................11, 12, 13

*Engelman v. Rofe,*
  144 N.Y.S.3d 20 (N.Y. App. Div. 1st Dep't 2021)................15

*Gottwald v. Sebert,*
  40 N.Y.3d 240 (N.Y. 2023)................................................8, 12

*Gibbons v. Bristol-Myers Squibb Co.,*
  919 F.3d 699 (2d Cir. 2019)................................................8

*Hughes v. Twenty-First Century Fox, Inc.,*
  304 F. Supp. 3d 429 (S.D.N.Y. 2018)................................16

*Landgraf v. USI Film Prod.,*
  511 U.S. 244 ................................................10

*Louis v. Niederhoffer*,
No. 23-CV-6470-LTS, 2023 WL 8777015 (S.D.N.Y. Dec. 19, 2023) ........................................9

*New York City Health & Hosps. Corp. v. Council of City of New York*,
303 A.D.2d 69 (N.Y. App. Div. 1st Dept 2003) ....................................................................15

*Pension Ben. Guar. Corp. v. R.A. Gray & Co.*,
467 U.S. 717 (1984) ...............................................................................................................11

*Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*,
35 N.Y.3d 332 (NY 2020) ...............................................................................8, 12, 13, 15

*Rossbach v. Montefiore Med. Ctr.*,
No. 19CV5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) ..............................16, 17

*Utts v. Bristol-Myers Squibb Co.*,
251 F. Supp. 3d 644 (S.D.N.Y. 2017) ..................................................................................8

**Constitutional Provisions**

U.S. Const., Amend. XIV ......................................................................................................10, 11

U.S. Const. Art. I, Sect. 9, Cl. 3 ...............................................................................................10

N.Y Const. art. 1, § 6 ..........................................................................................................10, 11

**Statutes**

Adult Survivor's Act, 2019 N.Y. Sess. Laws c. 203 (S.66A) ..........................................6-7, 14-16

Child Victims Act, 2019 N.Y. Sess. Laws c. 11 (S.2440, A 2683) ..............................5, 6, 14-16

Crim. Pro. Law § 30.10...............................................................................................................6

General Municipal Law § 50(8)...................................................................................................6

N.Y. Penal Code § 130 .................................................................................................... *passim*

N.Y. Penal Code § 130.52 .............................................................................................. *passim*

Sexual Assault Reform Act, 2000 Sess. Law News of N.Y. Ch. 1 (S. 8238, A.
11538) .................................................................................................................................3

**Other Authorities**

Fed. R. Civ. Proc. R. 12(b)(6).................................................................................................1, 7

N.Y. C.P.L.R. § 208 ............................................................................................................5

N.Y. C.P.L.R. § 214-g .................................................................................................. 6, 13-15

N.Y. C.P.L.R. § 214-j .................................................................................................. 7, 14-15

N.Y. C.P.L.R. § 215 ..........................................................................................................15

N.Y. C.P.L.R. § 3103 .......................................................................................................6, 7

*The New York Times*, 35 Scary Minutes: Women Tell Police of Assaults in Park,
    June 13, 2000. .......................................................................................................3

Senate Bill S.66-A available at
    https://www.nysenate.gov/legislation/bills/2021/S66 .................................................6, 7

Senate Bill S.2440 available at
    https://www.nysenate.gov/legislation/bills/2019/S2440 .............................................5

Senate Bill S.7082 available at
    https://www.nysenate.gov/legislation/bills/2019/S7082 .............................................6

Victims of Gender-Motivated Violence Protection Act, N.Y.C. Admin. Code §
    10-1101 *et seq.* ................................................................................................ *passim*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Steven Victor Tallarico a/k/a Steven Tyler ("**Mr. Tyler**") respectfully submits this Memorandum of Law in support of his Motion to Dismiss the Complaint in this action.

## I.   PRELIMINARY STATEMENT

**Mr. Tyler** vehemently denies the allegations in the Complaint.

Plaintiff's Complaint is based on purported sexual misconduct that occurred nearly half a century ago.  Notably, when the purported conduct occurred, the Victims of Gender-Motivated Violence Protection Act (the "**VGMVPA**") – the statute on which Plaintiff relies to assert her cause of action– *did not exist.*[1]  The "crime of violence" that Plaintiff ("**Ms. Bellino**") alleges occurred in 1975 and that she claims serves as the basis for her **VGMVPA** action – forcible touching – also did not exist at the time of the alleged conduct underlying her **VGMVPA** claim.[2] **Ms. Bellino**'s Complaint ignores these critical facts.

**Ms. Bellino**'s attempt to advance a claim based on legislative enactments decades after the purported misconduct occurred is contrary to the legislative intent, statutory construction, and fundamental notions of individual liberty and due process embedded in both the State and Federal Constitutions.

Even if the **VGMVPA** could reach back in time and generate a civil claim from conduct that long preceded its existence, the State's extensive legislation regarding statutory time limitations pre-empts **Ms. Bellino**'s reliance on the **VGMVPA**.  The governing provision of the New York Civil Procedure Law and Rules ("**CPLR**"), Section 214-g – enacted by the State's Child Victims Act in 2019 –  bars **Ms. Bellino**'s claim.

---

[1]  *See* N.Y.C. ADMIN. CODE § 10-1101 *et seq*. (enacted in 2018).

[2]  *See* N.Y. Penal Law § 130.52 (enacted in 2000).

In addition to her claim being barred based on the passage of time and based on Constitutional grounds, the purported factual allegations in the Complaint do not establish the elements required to present a *prima facie* **VGMVPA** claim.  The Complaint is replete with labels and conclusions masquerading as factual assertions to support the occurrence of a "crime of violence" motivated by animus towards the Plaintiff's gender.  Accordingly, Plaintiff's Complaint should be dismissed for its failure to plead facts sufficient to state a facially plausible claim.

## II.     BACKGROUND

### A.     The Allegations of the Complaint

**Ms. Bellino** filed the Complaint in NY Supreme Court on November 2, 2023.[3]  She alleges that "[i]n approximately the summer of 1975," when she was 17 years old, immediately after meeting **Mr. Tyler** with his "entourage" on a public New York City street, he kissed her without consent and groped her in a phone booth on Sixth Avenue in broad daylight while passersby watched and laughed.  Doc. 1-2, the Compl. at ¶¶ 11-17.

**Ms. Bellino** alleges that this conduct was precipitated by her questioning a song lyric of **Mr. Tyler's**, and that **Mr. Tyler** became visibly irritated by her question.  *See id.* at ¶ 14.  **Ms. Bellino** further alleges that **Mr. Tyler** then grabbed her hand and brought her into a tiny public phone booth where he allegedly groped and kissed her without consent.  *See id.* at ¶¶ 14-15.

Completely contrary to those allegations, **Ms. Bellino** then alleges that, instead of leaving the group, she did the opposite.  *See id.* at ¶ 21.  She alleges that she continued following **Mr. Tyler** and his entourage, on her own volition, to his hotel bar where he supposedly again kissed her without consent and "hump[e]d" her near the bar entrance of the hotel.  *Id.* at ¶¶ 21-22.

---

[3]  Service of the Complaint was perfected on **Mr. Tyler** as of January 2, 2024 pursuant to stipulation, *see* Doc. 1, Notice of Removal; *see also* Doc. 1-1, Stipulation.  **Mr. Tyler** removed the matter to this Court on January 31, 2024.  *See* Doc. 1.

Thereafter, **Ms. Bellino** asserts that **Mr. Tyler** left to go to his hotel room. *See id.* at ¶ 24. Once again completely contrary to **Ms. Bellino**'s allegations, she alleges she did not leave the hotel, but rather remained in the hotel lobby. *See id.* at ¶ 25. **Ms. Bellino** alleges she did not leave the hotel at that time, but later decided to leave the hotel after an invitation to **Mr. Tyler**'s hotel room by a member of the entourage. *See id.* at ¶¶ 24-26. Upon leaving, **Ms. Bellino** allegedly encountered a doorman who assisted with her alleged "escape" by putting her in a cab. *Id.* at ¶¶ 24-26.

**Ms. Bellino** contends that these allegations substantiate the crime of forcible touching, a Class A misdemeanor under NY Penal Law § 130.52 that was enacted twenty-five years **later**. *See* Doc. 1-2, the Comp. at ¶ 30. **Ms. Bellino** further alleges that these allegations substantiate that **Mr. Tyler** "committed a crime of violence motivated by gender" against her. *Id.* at ¶ 32. On these grounds, **Ms. Bellino** alleges a cause of action under the Victims of Gender-Motivated Violence Protection Act ("**VGMVPA**") pursuant to N.Y.C. ADMIN. CODE Section 10-1101 *et seq*. *See* Doc. 1-2 at ¶¶ 37-43.

### B. Forcible Touching

The New York State Legislature enacted the crime of forcible touching in 2000 as part of a comprehensive statutory scheme commonly known as the Sexual Assault Reform Act ("**SARA**"). *See* Sexual Assault Reform Act, 2000 Sess. Law News of N.Y. Ch. 1 (S. 8238, A. 11538) ("**SARA**"); N.Y. Penal Law § 130.52. **SARA** first took effect on February 1, 2001. *See* **SARA** at § 57.

The impetus for its enactment originated from "a notorious series of forcible touching of the sexual parts of women walking through Central Park" that occurred in 2000 – 25 years **after** the incident alleged by **Ms. Bellino**. N.Y. Penal Law § 130.52 (McKinney) (citing *The New York Times*, 35 Scary Minutes: Women Tell Police of Assaults in Park, June 13, 2000.).

C.    The VGMVPA

The City of New York similarly enacted the **VGMVPA** and made it effective Dec. 19, 2000,[4] twenty-five years **after** the purported events **Ms. Bellino** claims occurred.  According to the legislative findings and intent of the **VGMVPA**, this enactment followed a May 15, 2000 ruling by the United States Supreme Court, which ordained that "the  constitution provided no basis for a federal cause of action by victims of gender-motivated violence against perpetrators of offenses committed against them either under the commerce clause or the equal protection clause of the fourteenth amendment," and thereby eliminated a cause of action created by Congress in 1994 under the Violence Against Women Act ("VAWA") for victims of gender-motivated violence. N.Y.C. ADMIN. CODE § 10-1102.

> Consequently, the City determined that:

> In light of the void left by the supreme court's decision, this council finds that victims of gender-motivated violence should have a private right of action against perpetrators of offenses committed against them under the administrative code. This private right of action aims to resolve the difficulty that victims face in seeking court remedies by providing an officially sanctioned and legitimate cause of action for seeking redress for injuries resulting from gender-motivated violence.

*Id*.

Based on this resolution, in 2000, the City enacted the **VGMVPA** to create a civil cause of action for any person claiming to be injured by someone who commits "a crime of violence motivated by gender."  *Id*. at § 10-1104.  The Act adopted the following definition of crime of violence:

> Crime of violence.  The term "crime of violence" means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law . . . if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction.

---

4  *See* N.Y.C. ADMIN. CODE Section 10-1101 *et seq*.

> Crime of violence motivated by gender. The term "crime of violence motivated by gender" means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.

*Id*. at § 10-1103.

The **VGMVPA** initially provided a statute of limitations of seven (7) years after the alleged crime of violence or, if a claimant is infirm or an infant, nine (9) years after the inability to commence the action ceases. *See id*. at § 10-1105. In 2022, a new provision was added, stating that:

> Notwithstanding any provision of law that imposes a period of limitation to the contrary, any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022.

*Id*.

### D. The Enactment of State Law Addressing Sexual Assault

In 2019, the New York State Legislature passed the Child Victims Act ("**CVA**") to, among other things, "amend the civil practice law and rules, in relation to the statute of limitations for civil actions related to a sexual offense committed against a child, reviving such actions otherwise barred by the existing statute of limitations and granting trial preference to such actions."[5] Child Victims Act, 2019 N.Y. Sess. Laws c. 11 (S.2440, A 2683) ("**CVA**"). Among other things,[6] the **CVA** amended N.Y. **C.P.L.R.** § 208 to provide that a civil action with respect to conduct that would constitute a sexual offense under N.Y. Penal Code § 130 and other code provisions committed against a person under the age of eighteen years old, can be commenced on or before that person reached the age of fifty-five year old. *See* N.Y. **C.P.L.R.** § 208(b).

---

[5]    The text of the **CVA**, as encompassed in Senate Bill S.2440 is available at https://www.nysenate.gov/legislation/bills/2019/S2440.

[6]   The CVA also extended the statute of limitations for the criminal prosecution of certain sexual offenses against people under eighteen. *See* Senate Bill S.2440 § 1.

In addition, the **CVA** initially amended the civil practice rules to add Section 214-g. It provides that claims related to NY Penal Law §130 and other penal sexual offense code provisions; that were committed against a person under the age of eighteen; and were:

> barred as of the effective date of this section because the applicable period of limitation has expired . . . [are] hereby revived, and action thereon may be commenced not earlier than six months after, and not later than one year and six months after the effective date of this section [February 4, 2019].[7]

This time period was later extended from one year and six months to two years and six months. *See* NY C.P.L.R. § 214-g.[8] The **CVA** also, as applied to people under eighteen; (1) amended the statute to extend the limitations period in criminal prosecution of a sexual offense; (2) amended the general municipal law to eliminate the notice of claim requirement; (3) amended the court of claims act, to eliminate the notice of intention to file requirement; (4) amended the education law, to eliminate the notice of claim requirement; and (5) amended the judiciary law, in relation to judicial training regarding these claims.[9]

This required the revision of various state laws, including Crim. Pro. Law § 30.10, N.Y. C.P.L.R. § 3103, General Municipal Law §§ 50(8), 50-i, and various other provisions of the Court of Claims Act, the Education Law, the Judiciary Law.[10]

Subsequently, in May, 2022, the State Legislature passed the Adult Survivors Act ("**ASA**").[11] *See* Adult Survivor's Act, 2019 N.Y. Sess. Laws c. 203 (S.66A) ("**ASA**"). The **ASA**'s

---

[7] *Id*. at § 3.

[8] *See also* Senate Bill S.7082, extends the time in which to file a claim relating to certain child sexual abuse cases, available at https://www.nysenate.gov/legislation/bills/2019/S7082.

[9] *See generally* Senate Bill S.2440.

[10] *See* Senate Bill S.2440 §§ 1, 4-10.

[11] The text of the ASA, as encompassed in Senate Bill S.66-A is available at: https://www.nysenate.gov/legislation/bills/2021/S66.

purpose was to "amend the civil practice law and rules, in relation to the statute of limitations for civil actions related to certain sexual offenses committed against a person eighteen years of age or older, reviving such actions otherwise barred by the existing statute of limitations and granting trial preference to such actions."[12]  The **ASA** amended the civil practice rules to add a new Section, 214-j, that, among other things, revived claims related to NY Penal Law §130 and other penal sexual offense code provisions, where the statute of limitations had expired so that an action may be commenced within one year and six months of the effective date of that section – May 24, 2022.  *See* NY **C.P.L.R.** §214-j.  The **ASA** also amended N.Y. **C.P.L.R.** § 3103 to establish a special trial preference for cases which have been revived and amended the Judiciary Law to require administrative rulemaking regarding the revival of such claims.[13]

## III.  LEGAL ARGUMENT

### A.  The Complaint Fails to State a Claim under the VGMVPA.

#### 1.  Legal Standard

A defendant may invoke Rule 12(b)(6) to move for dismissal of any claim if the plaintiff fails to state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570; 127 S.Ct. 1955, 1973 (2007).  A claim presents the required "facial plausibility" only if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678; 129 S.Ct. 1937, 1949 (2009).  In resolving a 12(b)(6) motion under *Twombly*, the Court must follow a two-pronged approach.  *See Twombly*, 550 U.S. at 555-556; 127 S.Ct. at 1964-1965.

---

[12]  *Id*.

[13]  *See id*. at §§ 2-3.

First, the Court must separate well-pleaded facts from mere conclusions and consider only the factual allegations in its plausibility analysis. *See id*. at 555-556; 1964-1965. In performing this task, the Court must accept all well-pleaded factual allegations as true, but disregard all "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which] do not suffice." *Iqbal*, 556 U.S. at 678; 129 S.Ct. at 1949. Further, the Court need not and should not "'accept as true a legal conclusion couched as a factual allegation.'" *Id*. at 678-80; 1949-1950 (quoting *Twombly*, 550 U.S. at 555; 127 S.Ct. at 1964).

Second, the Court must "determine whether [the well-pleaded allegations] plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; 129 S.Ct. at 1950. There is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id*. A complaint is not sufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678; 1949 (quoting *Twombly*, 550 U.S. at 557; 127 S.Ct. at 1966).

It is "well-established that preemption may be analyzed and decided at the motion to dismiss stage." *Utts v. Bristol-Myers Squibb Co.*, 251 F. Supp. 3d 644, 672 (S.D.N.Y. 2017), *aff'd sub nom. Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019).

### 2. The VGMVPA Cannot be Applied Retroactively to a Claim from 1975.

The New York Court of Appeals has made clear that "[r]etroactive operation is not favored by courts and statutes will not be given such construction unless the language expressly or by necessary implication requires it." *Gottwald v. Sebert*, 40 N.Y.3d 240, 258 (N.Y. 2023). Indeed, there exists a "deeply rooted presumption against retroactivity . . . based on elementary considerations of fairness." *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 349, 370 (NY 2020).

Consistent with this strong presumption, a division of this Court recently dismissed a claim under the **VGMVPA** based on allegations of misconduct that occurred from 1974 through 1979.

The Court ruled without equivocation that "the Court cannot apply the GMV Law retroactively." *Louis v. Niederhoffer*, No. 23-CV-6470-LTS, 2023 WL 8777015, at *2 (S.D.N.Y. Dec. 19, 2023). The Court determined that the only court to have considered the retroactive application of the **VGMVPA** in this context concluded that the law, "which creates a new substantive cause of action . . . and does not provide for retroactive or immediate effectiveness, is not the type of statute that would be given retroactive effect." *Id*. at *1; (quoting *Adams v. Jenkins*, 115745/03, 2005 WL 6584554, at *1 (N.Y. Sup. Ct. Apr. 22, 2005)). Nor did the Court find its conclusion altered by the 2022 amendment to the **VGMVPA** law. *See Louis*, 2023 WL 8777015, at *1.

For these same reasons, this Court should dismiss Plaintiff's Complaint. Plaintiff is not seeking to simply extend a statute of limitations that has expired, as allowed for by the 2022 amendment. She is asking for this Court to recognize – retroactively – a cause of action under the **VGMVPA** applicable to acts that are expressly alleged to have occurred at a time that pre-dated the existence of the law by more than two decades. There is no indication in the **VGMVPA**, in the legislative findings or expressed intent of the **VGMVPA,** that New York City legislation intended a retroactive effect.

Moreover, **Ms. Bellino**'s claim is even more problematic than those in *Louis* because the underlying crime that **Ms. Bellino** claims occurred – forcible touching – was also not codified as a crime by the State in 1975. It was only made a crime by the State more than two decades after the incident alleged in the Complaint, on February 1, 2001. *See* N.Y. Penal Law § 130.52.

**Ms. Bellino** thus attempts to apply both the **VGMVPA** and N.Y. Penal Law § 130.52 retroactively, even though there is no indication in the **VGMVPA**'s legislative findings that a

crime[14] not in effect at the time the alleged underlying act occurred can serve as the basis of a **VGMVPA** claim.

Completely separately, a retroactive application of the **VGMVPA** and N.Y. Penal Law § 130.52 violates both the State and Federal constitutions. First, the retroactive application of a cause of action based on a retroactive application of the penal code implicates the *Ex Post Facto* Clause of the U.S. Constitution, U.S. Const. Art. I, Sect. 9, Cl. 3. The *Ex Post Facto* Clause is violated when Legislatures "retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S. 37, 43; 110 S.Ct. 2715, 2719 (1990). "The *Ex Post Facto* Clause flatly prohibits retroactive application of penal legislation." *Landgraf v. USI Film Prod.*, 511 U.S. 244, 266; 114 S.Ct. 1483, 1497 (1994). Therefore, reliance on a 2001 penal code provision to criminalize acts that supposedly occurred in 1975 is prohibited by the *Ex Post Facto* Clause. Because the penal code informs the civil action that **Ms. Bellino** purports to invoke, it is similarly tainted by the disallowed retroactive application she seeks. Specifically, a **VGMVPA** cause of action must allege a "crime of violence" defined as "an act or series of acts that *would constitute a misdemeanor or felony against the person as defined in state or federal law*." N.Y., Admin. Code § 10-1103, §10-1104 (emphasis added). Plaintiff cannot satisfy this requirement by relying on an unconstitutional adoption of retroactive penal legislation.

Second, the retroactive application of the **VGMVPA** also violates State and Federal due process protections. The Due Process Clause of the Fourteenth Amendment was specifically adopted in the wake of the Civil War to constrain the powers of States and promote individual liberty. It states in relevant part, that "[n]o State shall . . . deprive any person of life, liberty, or

---

14  Even if it does suggest such a preposterous assertion, this assertion violates and offends substantial notions of fair and due process. It literally breaches the constitutional commands of the ex post facto clause.

property, without due process of law." U.S. Const., Amend. XIV. Similarly, New York's Constitution includes a provision in accord with this amendment, ordaining that "[n]o person shall be deprived of life, liberty or property without due process of law." N.Y Const. art. 1, § 6.

Against this backdrop, the Supreme Court has observed: "It does not follow ... that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." *Pension Ben. Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730; 104 S.Ct. 2709, 2718 (1984). Thus, one establishes a due process violation when legislation is not justified by a rational legislative purpose and the legislature has acted in an arbitrary way. *See id*. at 729-730; 2717-2718.

To be sure, the Supreme Court has acknowledged that the government "may impose retroactive liability to *some degree*, particularly where it is confined to *short and limited periods required* by the *practicalities* of producing *national* legislation." *Eastern Enterprises v. Apfel*, 524 U.S. 498, 528–29; 118 S.Ct. 2131, 2148-2149 (1998) (internal citation and quotation marks omitted, & emphases added). In *R.A. Gray*, the Supreme Court rejected a due process challenge to the Multiemployer Pension Plan Amendments Act of 1980 (MPPAA) by finding a rational basis for Congress adopting an effective date for withdrawal liability provisions that preceded the enactment of the Act by *five months* and indicating that employers had ample notice of the withdrawal liability imposed by the MPPAA. *See R.A. Gray & Co.*, 467 U.S at 726, 729-734; 104 S.Ct. at 2716-2720. The Court noted that "the MPPAA merely requires a withdrawing employer to compensate a pension plan for benefits that have already vested with the employees at the time of the employer's withdrawal." *Id*. at 734; 2720.

In contrast, both the plurality and Justice Kennedy's concurring in part, and dissenting in part opinion in *Eastern Enterprises* held that a 35-year period of retroactivity was excessive. *See Eastern Enterprises*, 524 U.S. at 537-538; 118 S.Ct. 2153 (plurality opinion discussing the due process claim but ultimately ruling that this law violated the Takings Clause); *id*. at 547-550; 2158-2159 (decisive opinion of Justice Kennedy invalidating the Coal Act on due process grounds and finding that "in creating liability for events which occurred 35 years ago the Coal Act has a retroactive effect of unprecedented scope.").

New York case law echoes this type of scrutiny of the retroactive application of a statute. For example, the New York Court of Appeals has observed that the imposition of compensatory or punitive damages is problematic, if it penalizes conduct predating the statute. *See Gottwald v. Sebert*, 40 N.Y.3d 240, 260 (NY 2023) (upholding application of the anti-SLAPP statute amendments to Gottwald's post-effective date continuation of the action). In that vein, the Court of Appeals declined to retroactively apply certain provisions of the Housing Stability and Tenant Protection Act of 2019 (HSTPA), which among other things, substantially expanded the nature and scope of owner liability in rent overcharge cases. *See Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 349, 375-88 (NY 2020).

The court held that the overcharge calculation amendments passed "would create or considerably enlarge owners' financial liability for conduct that occurred, in some cases, many years or even decades before the HSTPA was enacted," and as such, "application of these amendments to past conduct would not comport with [the Court's] retroactivity jurisprudence or the requirements of due process." *Id*. at 349. Therefore, the court resolved the overcharge claims raised "pursuant to the law in effect when the purported overcharges occurred." *Id*.

"In determining whether retroactive application of a statute is supported by a rational basis, the relationship between the length of the retroactivity period and its purpose is critical." *Id.* at 376. Statutes with lengthy periods of retroactivity are upheld in "instances where retroactive application was central to the statutes' purpose."[15] *Id.* at 377.

In this case, there is no explicit indication or explanation for why retroactivity dating back 25 years would be central to the **VGMVPA**'s purpose. To the contrary, the express purpose of the **VGMVPA** was to create a cause of action for gender-motivated violence ***after*** the Supreme Court's rejection of a federal cause of action in 2000. *See supra.* This expressed intent – to fill a gap resulting from the Supreme Court's ruling on a prospective basis – does not support recognition of retroactivity (particularly one reaching back decades in time) as sought by the Plaintiff in this matter. As was true in *Eastern Enterprises* and *Regina Metro*, the retroactive scope in this case is not "directly related or integral to furtherance of the legislative goals," of the **VGMVPA**. 35 N.Y.3d at 379. Consequently, retroactive application "would be irrational given the extent of settled interests, degree of repose and lack of a permissible basis for unsettling those interests." *Id.*

> ### 3.  The Complaint Must be Dismissed as Untimely Because the 2022 VGMVPA Amendment is Preempted by the State's Sexual Assault Acts.

The Complaint should also be dismissed because the **VGMVPA** action is not timely under the operative state law – NY CLPR § 214-g. Such law preempts the 2022 **VGMVPA** amendment establishing a conflicting statute of limitations period. State law may preempt local law by field

---

[15]  The Court of Appeals has observed that "there are two types of retroactive statutes that courts have found to be constitutional:  those employing brief, defined periods that function in an administrative manner to assist in effectuating the legislation, and statutory retroactivity that – even if more substantial – is integral to the fundamental aim of the legislation." *Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal*, 35 N.Y.3d 332, 376 (2020).

preemption: "when a local government legislates in a field for which the State Legislature has assumed full regulatory responsibility." *DJL Rest. Corp. v City of New York*, 96 N.Y.2d 91, 95 (N.Y. 2001).

The State Legislature may expressly articulate its intent to occupy a field or may do so by implication. *See id*. An implied intent to preempt may be found in a "declaration of State policy by the State Legislature . . . or from the fact that the Legislature has enacted a comprehensive and detailed regulatory scheme in a particular area." *Id*. In the latter instance, a local government is "precluded from legislating on the same subject matter unless it has received clear and explicit authority to the contrary." *Id*. (internal citation and quotation marks omitted).

The State laws at issue – the **CVA** and the **ASA** – clearly occupy the field regarding the revival of claims derived from state penal sexual assault law. The State has adopted a comprehensive scheme that covers persons both under and over the age of eighteen. The **CVA** and the new section of the **CPLR** it created applies to "every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense under N.Y. Penal Code § 130 and certain other specified code provisions, committed against a child less than eighteen years of age." N.Y. **C.P.L.R.** § 214-g.

Similarly, the **ASA** and the new section of the **CPLR** it created applies "to every civil claim or cause of action brought against any party alleging intentional or negligent acts or omissions by a person for physical, psychological, or other injury or condition suffered as a result of conduct which would constitute a sexual offense" under N.Y. Penal Code § 130 and certain other specified code provisions, committed against a person over the age of eighteen years old. N.Y. **C.P.L.R.** § 214-j.

Both provisions apply "notwithstanding any provision of law which imposes a period of limitation to the contrary." N.Y. **C.P.L.R.** §§ 214-g, 214-j. The **CVA** and the **ASA** also adopted additional revisions to the **CPLR**, Judiciary Law and other state laws. *See supra*.

An earlier ruling of this Court, prior to the passage of the **CVA** and **ASA**, is instructive here. The Court previously considered and rejected a claim that the **VGMVPA** was preempted by New York's **CPLR** provision imposing a one-year statute of limitations for intentional torts such as assault and battery. *See Doe v. Gooding*, No. 20-CV-06569 (PAC), 2022 WL 1104750, at *2 (S.D.N.Y. Apr. 13, 2022) (discussing N.Y. CPLR § 215(3)). In ruling that the **VGMVPA** was not preempted by the **CPLR**, the Court relied on the First Department's decision in *Engelman v. Rofe*, 144 N.Y.S.3d 20 (N.Y. App. Div. 1st Dep't 2021), which distinguished between the conduct targeted by each law, reasoning that the legislative intent of the **VGMVPA** "was to create a civil rights remedy or cause of action such as in [the federal Violence Against Women Act], rather than to extend the statute of limitations for a particular class of assaults" as in the **CPLR**. *Id*. at *3 (quoting *Engelman*, 144 N.Y.S. 3d at 24–26).

However, the 2022 **VGMVPA** amendment does exactly what the First Department says the **VGMVPA** did not do - extend the statute of limitations for civil actions based on a particular class of sexual assault claims. Therefore, the ASA and CVA preempt the later 2022 **VGMVPA** amendment. The court in *Doe* also relied on "the City's broad policing power to enact legislation to protect its residents from discrimination, including gender-related violence." *Doe*, 2022 WL 1104750, at *2 (quoting *Engelman*, 144 N.Y.S. 3d at 25). The court, however, reasoned that "[n]evertheless, the City Council may not exercise its police power to adopt a law which is inconsistent with a State statute." *New York City Health & Hosps. Corp. v. Council of City of New*

- 15 -

*York*, 303 A.D.2d 69, 74 (N.Y. App. Div. 1st Dept 2003).  The subsequent VGVMPA amendment clearly encroaches on the field occupied by the **CVA** and **ASA**.

Plaintiff was afforded a generous opportunity – 2.5 years from the enactment of the **CVA** – to bring claims and failed to do so.  She cannot use the **VGMVPA** to circumvent her lack of diligence.

### 4. Plaintiff Also Independently Fails to Allege Facts Plausibly Supporting a VGMVPA Claim.

A plaintiff alleging a violation of the **VGMVPA** is required to establish, by well-pleaded facts, the following elements in support of this claim: (1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) the act presents a serious risk of physical injury; (3) it was perpetrated because of plaintiff's gender; (4) it was also motivated in part because of animus against plaintiff's gender; and (5) it resulted in injury.  *See Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018).

As discussed *supra¸* **Ms. Bellino** fails to allege any act that – at the time the act purportedly occurred – constituted a misdemeanor or felony, since the penal code provision relied on by **Ms. Bellino** did not exist in 1975.  Therefore, she fails to establish the first element.

The Complaint does not state how **Ms. Bellino**'s allegations created a serious risk of physical injury, thereby disposing of the second element.  *See Rossbach v. Montefiore Med. Ctr.*, No. 19CV5758 (DLC), 2021 WL 930710, at *11 (S.D.N.Y. Mar. 11, 2021) (granting summary judgment where Plaintiff had not produced evidence that "Morales' unwanted touching posed a serious risk of physical injury").

As to the third and fourth elements, Plaintiff's allegations of gender animus are conclusory and unsupported.  *See id.* (noting that courts have dismissed **VGMVPA** claims based on the plaintiff's failure to state "any facts showing that [defendant's] alleged acts demonstrated any

hostility based on gender.") (quoting *Cordero v. Epstein*, 22 Misc. 3d 161, 163, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008). Generally, the animus element requires the plaintiff to present "extrinsic evidence of the defendant's expressed hatred toward women as a group" or allege specific "actions and statements by the perpetrator during the commission of the alleged crime of violence." *Breest v. Haggis*, 180 A.D.3d 83, 92-93 (N.Y. 1st Dep't 2019).

*Breest* allowed an inference of animus in cases involving rape. However, Plaintiff "points to no authority indicating that the requisite animus element may be inferred in GMVPL cases not premised on rape." *Rossbach*, 2021 WL 930710, at *11. On these grounds, Plaintiff's claims are also fatally defective as a matter of law and should be dismissed.

## IV. CONCLUSION

For the foregoing reasons, **Mr. Tyler** respectfully requests that this Court grant his motion to dismiss, along with such other relief as the Court deems just and proper.

Dated: New York, New York        Respectfully submitted,

By: /s/ *Corrine A. Irish*

Corrine A. Irish, Esq.

Lead Counsel: David W. Long-Daniels, Esq. (pro hac admission to be filed)

M. Allyson Lumpkin, Esq. (pro hac admission to be filed)

Squire Patton Boggs (US) LLP

One Atlantic Center

1201 W. Peachtree Street, NW

Suite 3150

Atlanta, GA 30309

(678) 272-3202

Email: David.long-daniels@squirepb.com

Allyson.lumpkin@squirepb.com

Corrine A. Irish, Esq.

Katharine J. Liao, Esq.

Squire Patton Boggs (US) LLP

1211 Avenue of the Americas, 26th Floor

New York, New York 10036

(212) 872-9823

Email:   corrine.irish@squirepb.com

katharine.liao@squirepb.com

Attorneys for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2024, a copy of the foregoing was filed electronically and served to all Parties by operation of the Court's electronic filing system as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ *Corrine A. Irish*
Corrine A. Irish

1100123858\12\AMERICAS