UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JANE DOE,

                Plaintiff,

v.

SEAN COMBS, HARVE PIERRE; THE THIRD
ASSAILANT; DADDY'S HOUSE RECORDINGS,
INC. and BAD BOY ENTERTAINMENT
HOLDINGS, INC.,

                Defendants.
------------------------------------------------------------X

Civil Case No. 1:23-cv-10628-JGLC

**AMENDED COMPLAINT**

**JURY TRIAL DEMAND**

> **TRIGGER WARNING:**
> **THIS DOCUMENT CONTAINS HIGHLY GRAPHIC INFORMATION OF A SEXUAL NATURE, INCLUDING SEXUAL ASSAULT**

Plaintiff Jane Doe ("Ms. Doe") hereby alleges as follows:

**PRELIMINARY STATEMENT**

1. On November 16, 2023, Casandra Ventura a/k/a "Cassie" filed a 35-page lawsuit in which she exposed Sean Combs for subjecting her to nearly a decade of physical, sexual and emotional abuse punctuated by rape, sex trafficking and being forced to engage in drug fueled nonconsensual sexual encounters with other men.

2. Ordinarily, when a lawsuit such as Ms. Ventura's is filed that involves events that took place long ago, witnesses are few and far between and evidence hard to muster. Not so for the claims brought against Mr. Combs. Within minutes of the filing, salient facts of Ms. Ventura's claims were confirmed by various witnesses, including a rival musician whose car Mr. Combs blew up as well as various individuals who observed Mr. Combs beat Ms. Ventura.

1

3.     Only a few days later, two other lawsuits were filed against Mr. Combs. In one, plaintiff Joi Dickerson-Neal alleged that Mr. Combs drugged and sexually assaulted her when she was a college student. The other lawsuit accused Ms. Combs and singer Aaron Hall of forcing the plaintiff and another unidentified woman into nonconsensual sex.

4.     At the same time, a fourth lawsuit was filed; this one against Mr. Combs' companies and Defendant Harve Pierre, the longtime President of Bad Boy Entertainment Holdings, Inc. ("Bad Boy"). The suit alleged that Mr. Pierre used his position of power at Bad Boy to groom and sexually assault his former assistant, and that Bad Boy looked the other way at the time.

5.     This ~~is now~~lawsuit was the fifth ~~lawsuit~~suit filed against Mr. Combs ~~in the last~~over a three ~~weeks~~-week period in winter 2023. Incredibly, the allegations brought by Ms. Doe are in many ways even more egregious than those brought by his prior victims.

6.     Specifically, in 2003, when she was only 17 years old and in the 11th grade, Ms. Doe was sex trafficked and gang raped by Mr. Combs, Mr. Pierre and the Third Assailant.[1] In short:

- When she was just a teenager, Ms. Doe met Mr. Pierre and the Third Assailant in a lounge in the Detroit, Michigan area. While at the lounge, Mr. Pierre insisted that he was "best friends" with Mr. Combs, and even called Mr. Combs with Ms. Doe.

- Mr. Combs convinced Ms. Doe, who was half his age at the time, to accompany Mr. Pierre and the Third Assailant on a private jet to come to his studio in New York City.

- Before they left for the private jet, Mr. Pierre smoked crack cocaine in a bathroom at the lounge, in which he also sexually assaulted Ms. Doe by forcing her to give him oral sex.

---

[1] The "Third Assailant" is a pseudonym. When the name of the Third Assailant is revealed during discovery, Plaintiff will seek to amend the Complaint to replace the pseudonym.

- Mr. Pierre, Third Assailant and another gentleman then escorted the highschooler to a private jet, which flew them to Teterboro, New Jersey. There were SUVs awaiting the group at Teterboro, and the four of them were driven to Daddy's House Recording Studio, a studio famously owned and operated by Mr. Combs and Bad Boy.

- While at the studio, Mr. Combs and his associates, including Mr. Pierre, plied Ms. Doe with drugs and alcohol. As the night wore on, the 17-year-old Ms. Doe became more and more inebriated, eventually to the point that she could not possibly have consented to having sex with anyone, much less someone twice her age.

- While at the studio, Ms. Doe was gang raped by Mr. Combs, the Third Assailant and Mr. Pierre, in that order.

- While Mr. Combs was raping Ms. Doe, he complained that he could not "get off" unless she pinched his nipples as hard as she could.

- Mr. Combs then watched on as Third Assailant, who Ms. Doe had not even realized had begun to have sex with her, raped Ms. Doe as she told him to stop.

- After Third Assailant was finished, Mr. Pierre took his turn at raping Ms. Doe and then violently forced her to give him oral sex, during which Ms. Doe was choking and struggling to breathe.

- When Mr. Pierre finished, he left Ms. Doe in the bathroom alone. Ms. Doe fell into the fetal position and lay on the floor. Her vagina was in pain.

- Finally, after a period of time, Ms. Doe regained her bearings. However, she could barely stand up following the gang rape, and had to be helped to walk out of the building and back into a car. She was taken back to an airport and flown back to Michigan. However, she has very limited recollection of her transport home, and only remembers being in her car sometime early in the morning.

7. Unlike many victims who have come forward after decades, Ms. Doe can prove that she not only met Mr. Combs on the night in question, but was in his studio, in New York City, with him on that night. Remember when viewing these, Ms. Doe was 17 years old.[2]



  

8. Ms. Doe has lived with her memories of this fateful night for 20 years, during which time she has suffered extreme emotional distress that has impacted nearly every aspect of

---

[2] Ms. Doe's face has been blurred in the following pictures for the purpose of anonymity.

her life and personal relationships.  Given the brave women who have come forward against Ms. Combs and Mr. Pierre in recent weeks, Ms. Doe is doing the same.

9. To that end, Ms. Doe brings this action seeking injunctive, declaratory and monetary relief against Defendants in violation of the *Victims of Gender-Motivated Violence Protection Law*, Gender Motivated Violence Act, N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL").

## JURISDICTION AND VENUE

10. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as this action involves citizens of different states and the amount in controversy in this matter exceeds $75,000.  The Court has supplemental jurisdiction over Plaintiff's related claims arising under state and city law pursuant to 28 U.S.C. § 1367(a).

11. Pursuant to 28 U.S.C. § 1391(b), venue is proper in this Court because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices and intentional and negligent tortious conduct alleged herein, occurred in this district.

## PARTIES

12. Plaintiff Jane Doe is a citizen of State of Michigan and Canada.

13. Defendant Sean Combs is a citizen of the State of California.  At all relevant times Mr. Combs was the owner of Defendants Bad Boy Entertainment Holdings and Daddy's House Recordings, Inc.

14. Defendant Harve Pierre is ~~a citizen of the State of New York~~, upon information and belief, a citizen of the State of New Jersey.  At all relevant times Mr. Pierre was a high-ranking executive (Senior Vice President) of Defendant Bad Boy Entertainment Holdings, Inc.,

5

and was promoted to Executive VP and General Manager of Bad Boy in 2003, the year the events described herein took place.

15.     Defendant the Third Assailant is, upon information and belief, a citizen of the State of New York. Upon information and belief, at all relevant times, the Third Assailant was an employee and/or agent of Defendant Bad Boy Entertainment Holdings, Inc.

16.     Defendant Daddy's House Recordings, Inc. ("Daddy's House") is a music, media, and entertainment company founded and owned by Defendant Sean Combs and Bad Boy. Daddy's House is incorporated and headquartered in New York, New York. During the relevant time period, Daddy's House and/or Sean Combs owned and operated the Daddy's House Recording Studio wherein Ms. Doe was raped by Mr. Combs, Mr. Pierre and Third Assailant. As described herein, Mr. Combs used the facts of his ownership of and title at Daddy's House in order to facilitate the unlawful conduct described herein. In addition, he, as the owner of Daddy's House, watched Ms. Doe being raped by two of his employees, on the premises of Daddy's House, and did nothing to stop them (in fact, he encouraged it).

17.     Defendant Bad Boy Entertainment Holdings, Inc. ("Bad Boy") is a music, media, and entertainment company founded and owned by Defendant Sean Combs. Bad Boy is incorporated and headquartered in New York, New York. During the relevant time period, Bad Boy and/or Sean Combs owned and operated the Daddy's House Recording Studio wherein Ms. Doe was raped by Mr. Combs, Mr. Pierre and Third Assailant. As described herein, Mr. Combs used the facts of his ownership of and title at Bad Boy in order to facilitate the unlawful conduct described herein. In addition, he, as the owner of Bad Boy, watched Ms. Doe being raped by two of his employees, on the premises of Daddy's House, and did nothing to stop them (in fact, he encouraged it). Moreover, Mr. Pierre used his title and that of Mr. Combs in order to facilitate

the unlawful conduct described herein.  Further, he, the Senior Vice President of Bad Boy, watched Ms. Doe being raped by its owner and one of its employees, on the premises of Daddy's House, and did nothing to stop them (in fact, he encouraged it).

## FACTUAL ALLEGATIONS

18. In 2003, Ms. Doe was a 17-year-old 11th grader residing in a suburb of Detroit Michigan.

19. At the time, Mr. Combs was 34 years old – twice the age of Ms. Doe – and one of the most well-known and influential music artists of all time.

20. A decade earlier, Mr. Combs founded Bad Boy and installed his longtime friend, Mr. Pierre, into the role of Senior Vice President, then the role of Executive Vice President, and eventually, promoted him to President of the Company.

21. At the time, Mr. Combs had many connections to Michigan, including, among others, to the Black Mafia Family ("BMF"), a drug trafficking and money laundering organization that is rumored to have seeded Bad Boy.  Accordingly, upon information and belief, Mr. Combs' associates, including Mr. Pierre and the Third Assailant, spent significant time in and around Detroit, Michigan.

22. On one evening between the spring and fall of 2003, Ms. Doe was out with friends.  It was not uncommon for her and her friends to frequent bars and lounges in the Detroit area.  Certain of Ms. Doe's friends were well connected with people in the music industry.

23. On the evening in question, Ms. Doe was with friends in a lounge when she was approached by who she later learned was Mr. Pierre.  Mr. Pierre was with his own friends and/or business associates, including the Third Assailant.  Mr. Pierre, the Third Assailant and their friends were dressed in suits.

24. Mr. Pierre ~~repeatedly~~ complimented Ms. Doe's appearance, saying that she was hot, among other things. He then began talking about his self-described "best friend" and "brother," Mr. Combs.

<ins>25. He told Ms. Doe that he and his friends, including the Third Assailant, were executives at Bad Boy, Mr. Combs' well-known recording label. He referenced his affiliation with Bad Boy and Mr. Combs as a means of keeping Ms. Doe interested in the conversation.</ins>

~~25.~~<ins>26.</ins> Specifically, Mr. Pierre continually stated that Mr. Combs would love to meet Ms. Doe.

~~26.~~<ins>27.</ins> Mr. Pierre even called Mr. Combs and put Ms. Doe on the line. Mr. Combs told Ms. Doe that he would love to meet her, and that she should accompany Mr. Pierre to New York City in a private jet.

<ins>28. The individual defendants used not only their affiliations with Bad Boy as a means to facilitate the unlawful conduct to follow, but also their affiliations with Daddy's House, where Ms. Doe was enticed to meet Mr. Combs.</ins>

~~27.~~<ins>29.</ins> Shortly thereafter, Mr. Pierre directed Ms. Doe to go with him into the bathroom at the lounge. Once inside the bathroom, Mr. Pierre began to smoke crack cocaine from what appeared to be an aluminum can.

~~28.~~<ins>30.</ins> After he finished smoking crack, Mr. Pierre suddenly took out his penis, demanded that Ms. Doe "suck [his] dick" and forced Ms. Doe's head down to perform oral sex on him.

~~29.~~<ins>31.</ins> After sexually assaulting Ms. Doe, Mr. Pierre directed her to accompany him, the Third Assailant and a third member of their group to an airport in Pontiac, Michigan, where

8

Signature, a Fixed Base Operator, had prepared a private jet to take the four of them to New York City.

30.32.  Upon information and belief, the private jet landed at Teterboro Airport.  Upon departing the jet, two black SUVs were awaiting the group.

31.33.  Ms. Doe got into an SUV with Mr. Pierre, and the Third Assailant and the other member of the group went in the second SUV.

32.34.  The SUVs brought the group to Daddy's House Recording Studio, a recording studio and hangout owned and operated by Mr. Combs and Bad Boy.

33.35.  When Ms. Doe arrived, she was escorted into the building, where she distinctly remembers seeing a sign for the company, Technicolor.

34.36.  Upon entering the studio, Ms. Doe first encountered Mr. Combs.  At the time she arrived, a female recording artist was using the studio as Mr. Combs and her parents watched on.  She finished up shortly after Ms. Doe arrived and left.  In other words, Mr. Combs had Ms. Doe trafficked to New York to observe him working prior to committing unlawful acts against her at his place of employment.

35.37.  While still in the studio section of Daddy's House, Mr. Combs asked Ms. Doe to sit on his lap to take a picture.  A copy of the photograph is below.



9

36.38.  Mr. Combs, Mr. Pierre and the Third Assailant began to ply Ms. Doe – a 17-year-old child at the time – with copious amounts of drugs and alcohol.

37.39.  While the evening became a blur, Ms. Doe does recall Mr. Combs, Mr. Pierre and the Third Assailant hitting on her incessantly, stroking her body, asking to see her "ass" and telling her how "hot" and "sexy" she was.

38.40.  Various other pictures were taken in the studio that night, leaving no doubt that Ms. Doe was in Mr. Combs' New York City studio, with Mr. Combs, on the night she was raped.



41.  And, not only was Ms. Doe at the studio, but the individual defendants used the accoutrements of the studio (as depicted above) to entice Ms. Doe to stay and drink alcohol and do drugs.

39.42.  As the night wore on, the 17-year-old Ms. Doe became more and more inebriated, eventually to the point that she could not possibly have consented to having sex with anyone, much less someone twice her age.

40.43.  Nevertheless, that evening Mr. Combs directed Ms. Doe to accompany him to the bathroom at the studio.  Once there, Mr. Combs removed Ms. Doe's skirt and underwear and penetrated her from behind with his penis while she hung over the sink.

41.44.  Ms. Doe did not consent to having sex with Mr. Combs, but he continued thrusting.  At some point, Mr. Combs turned Ms. Doe around to face him.  He told her that he could not orgasm and asked her to squeeze his nipples as hard as she could to help him "get off."  He then turned her back around and continued to rape her.

45.     Mr. Pierre, then SVP of Bad Boy, and the Third Assailant, who upon information and belief was also an executive of Bad Boy, watched Mr. Combs rape Ms. Doe, on the premises of Daddy's House, and did nothing to stop him.  In fact, he encouraged it.

42.46.  By this point, Ms. Doe was coming in and out of consciousness because of the drugs and alcohol she had been given by Defendants.  Her next memory was looking up into the mirror above the sink to find that the Third Assailant had replaced Mr. Combs and was raping her from behind.  Mr. Combs was watching the Third Assailant sexually assault Ms. Doe from a chair outside of the bathroom.

43.47.  At this point, Ms. Doe mustered the energy to tell the Third Assailant to stop, and that she did not want to be having sex with him.  The Third Assailant did not stop, and continued to rape Ms. Doe, who did not have the strength to force him off of her.

48.     Mr. Combs used the facts of his ownership of and title at Daddy's House in order to facilitate the unlawful conduct described herein.  In addition, he, as the owner of Daddy's House, watched Ms. Doe being raped by one of his employees, on the premises of Daddy's House, and did nothing to stop him.  In fact, he encouraged it.

49. And Mr. Pierre, then SVP of Bad Boy, watched one of his employees rape Ms. Doe, on the premises of Daddy's House, and did nothing to stop him.  In fact, he encouraged it.

44.50.  After the Third Assailant was finished, he was replaced by Mr. Pierre, who began by having nonconsensual vaginal sex with Ms. Doe before violently forcing her to give him oral sex.  During the latter part of the sexual assault, Mr. Pierre forced his penis into Ms. Doe's mouth without her consent.  Ms. Doe remembers that Mr. Pierre was sweaty and that she had difficulty breathing.

51. Mr. Combs used the facts of his ownership of and title at Daddy's House in order to facilitate the unlawful conduct described herein.  In addition, he, as the owner of Daddy's House, watched Ms. Doe being raped by the Senior Vice President of his Company, on the premises of Daddy's House, and did nothing to stop him.  In fact, he encouraged it.

45.52.  When Mr. Pierre finished, he left Ms. Doe in the bathroom alone.  Ms. Doe fell into the fetal position and lay on the floor.  Her vagina was in pain.

46.53.  Finally, after a period of time, Ms. Doe regained her bearings.  However, she could barely stand up following the gang rape, and had to be helped to walk out of the building and back into a car.  She was taken back to an airport and flown back to Michigan.  However, she has very limited recollection of her transport home, and only remembers being in her car sometime early in the morning.  Her underwear was missing.

47.54.  As a result of being raped by Mr. Combs, Mr. Pierre and the Third Assailant, Ms. Doe suffered significant emotional distress and feels of shame that have plagued her life and personal relationships for 20 years.

48.55.  Ms. Doe knew that speaking out against Defendants would be extremely difficult and that she would likely be subjected to retaliation and defamatory slurs and attacks.

49.56.  However, in November 2023, Ms. Doe read about a lawsuit filed against Mr. Combs by Casandra Ventura a/k/a "Cassie."  Ms. Ventura's suit described a decade of physical, sexual and mental abuse.  Most triggering for Ms. Doe was reading about Ms. Ventura's allegations of sex trafficking and being forced to have sex with other men against her will.  Ms. Doe obviously understands that she too had been sex trafficked, and that Mr. Combs' behavior in forcing women into nonconsensual sex was not an isolated incident or unique only to Ms. Ventura.

50.57.  Then, just days later, Ms. Doe read about a case filed against Mr. Pierre.  The suit alleged that Mr. Pierre used his position of power at Bad Boy to groom and sexually assault his former assistant.

51.58.  Seeing two other women bravely speak out against Mr. Combs and Mr. Pierre, respectively, gave Ms. Doe the confidence to tell her story as well.  As such, she filesfiled this suit.

## FIRST CAUSE OF ACTION
**Violation of the Victims of Gender-Motivated Violence Protection Law,
N.Y.C. Admin. Code §§ 10-1101, *et seq.* ("VGMVPL")**
***Against All Defendants***

52.59.  Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

60.     New York City's Victims of Gender-Motivated Violence Protection Law was first passed in 2000 as a remedial statute intended to correct "the void left by the Supreme Court" when it struck down the federal Violence Against Women Act, VAWA, and "to resolve the difficulty that victims face in seeking court remedies by providing an officially sanctioned and legitimate cause of action for seeking redress for injuries resulting from gender-motivated violence."  New York City, Local Law No. 73 Int. 752-A (2000), Sec.1.

13

61.     In June 2022, the City Legislature amended the VGMVPL to include a two year "lookback" period, finding that "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitation has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022."

~~53.~~ 62.   The above-described conduct of Defendant Mr. Combs, including, but not limited to, Mr. Combs's sexual assault of Plaintiff in New York City, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

~~54.~~ 63.   The above-described conduct of Defendant Mr. Pierre, including, but not limited to, Mr. Pierre's sexual assault of Plaintiff in New York City, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by

14

gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

55.64.  The above-described conduct of Defendant the Third Assailant, including, but not limited to, the Third Assailant's sexual assault of Plaintiff in New York City, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

56.65.  Defendant Bad Boy Entertainment Holdings, Inc. and Daddy's House Recordings, Inc. enabled Defendants' the commission of the crime of violence motivated by gender, and is therefore also liable under the VGMVPL § 10-1104.

57.66.  As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

58.67.  The above-described conduct of Defendants constitutes a sexual offense as defined in Article 130 of the New York Penal Law.

59.68.  Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "two years and six months after September 1, 2022."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays judgment be entered in her favor against Defendants, and each of them, as follows:

    A.    For a money judgment representing compensatory damages including consequential damages, lost wages, earning, and all other sums of money, together with interest on these amounts, according to proof;

    B.    For a money judgment for mental pain and anguish and severe emotional distress, according to proof;

    C.    For punitive and exemplary damages according to proof;

    D.    For attorneys' fees and costs;

    E.    For prejudgment and post-judgment interest; and

    F.    For such other and further relief as the Court may deem just and proper.

Dated: March 29, 2024
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
Douglas H. Wigdor
Michael J. Willemin
Meredith A. Firetog

85 Fifth Avenue
New York, New York 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com