**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JANE DOE,                                                            :
                                                                               :      Civil Case No. 1:23-cv-10628-JGLC
                                             Plaintiff,              :
                                                                               :
                            v.                                         :
                                                                               :
SEAN COMBS, HARVE PIERRE; THE THIRD           :
ASSAILANT; DADDY'S HOUSE RECORDINGS,      :
INC. and BAD BOY ENTERTAINMENT                   :
HOLDINGS, INC.,                                               :
                                                                               :
                                             Defendants.          :
-------------------------------------------------------------X

## PLAINTIFF JANE DOE'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**WIGDOR LLP**

Douglas H. Wigdor
Michael J. Willemin
Meredith A. Firetog

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845

dwigdor@wigdorlaw.com
mwillemin@wigdorlaw.com
mfiretog@wigdorlaw.com

*Counsel for Plaintiff*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ iii

PRELIMINARY STATEMENT ....................................................................................... 1

RELEVANT FACTUAL BACKGROUND....................................................................... 2

ARGUMENT ..................................................................................................................... 3

I.      THE VGMVPL IS NOT PREEMPTED BY THE CVA ....................................... 3

      A.      The Relevant Laws at Issue ...................................................................... 3

      B.      The First Department Decided that the VGMVPL is Not Preempted .................... 5

            1.      *Engelman v. Rofe* .......................................................................... 5

            2.      Other Decisions Follow *Engelman* ............................................. 7

      C.      *Bellino v. Tallarico* is Not Relevant Here................................................. 8

II.     THE APPLICABLE VERSION OF THE VGMVPL PERMITS CORPORATE LIABILITY................................................................................................................... 9

III.    THE CORPORATE DEFENDANTS ARE LIABLE BECAUSE THEY ENABLED SEXUAL ASSAULT ................................................................................ 11

CONCLUSION................................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

<u>**Page(s)**</u>

<u>**Cases**</u>

Asman v. Ambach,
   64 N.Y.2d 989 (1985) ............................................................................................................ 10

Bradley v. School Board of Richmond,
   416 U.S. 696 (1974) ............................................................................................................. 10

Cordero v. Epstein,
   869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008) .............................................................................. 8

Doe v. Gooding,
   No. 20 Civ. 06569 (PAC), 2022 WL 1104750 (S.D.N.Y April 13, 2022) ........................... 7, 8

Engelman v. Rofe,
   144 N.Y.S.3d 20 (1st Dep't 2021) .................................................................................. 5, 6, 7

In re Gleason (Michael Vee, Ltd.),
   96 N.Y.2d 117 (2001) .......................................................................................................... 10

Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,
   739 F.3d 45 (2d Cir. 2013) .................................................................................................... 8

Palin v. New York Times Co.,
   510 F. Supp. 3d 21 (S.D.N.Y. 2020) ................................................................................... 11

Posillico v. Southold Town Zoning Bd. of Appeals,
   195 N.Y.S.3d 697 (2d Dep't 2023) ..................................................................................... 10

Riviello v. Waldron,
   47 N.Y.2d 297 (1979) .......................................................................................................... 13

<u>**Statutes**</u>

97 N.Y. Jur. 2d Statutes § 10 ..................................................................................................... 10
N.Y.C. Admin. Code §§ 10-1101 .......................................................................................... passim

<u>**Rules**</u>

CPLR § 201 .................................................................................................................................. 6
CPLR § 214 ........................................................................................................................... passim
CPLR § 215 .................................................................................................................................. 8
F.R.C.P. 12 ................................................................................................................................... 1

Plaintiff hereby submits this Memorandum of Law in Opposition to Defendants' motion to dismiss the Amended Complaint.

## PRELIMINARY STATEMENT

Defendants' second stab at dismissing Ms. Doe's well-pleaded allegations under New York City's Victims of Gender-Motivated Violence Protection Law ("VGMVPL") is wholly unpersuasive, as they seek to completely distort the plain language of the relevant law and the binding precedential decisions governing that law.  Defendants attempt to distract from the well-pleaded allegations in the Amended Complaint by complaining that the horrendous allegations detailed therein are part of a "stunt" to cause "unwanted publicity" and "embarrassment" to Defendants.  While Defendants may attempt to deny the allegations—which are supported by documentary evidence in the form of pictures of Ms. Doe in Defendants' recording studio—their blanket denial is completely irrelevant on a motion to dismiss under F.R.C.P. 12.

Realizing that the allegations in the Amended Complaint clearly state claims under the VGMVPL, Defendants instead resort to completely illogical and baseless arguments that the VGMVPL is pre-empted by expired look-back statutes, even though those arguments have been considered and dismissed by binding New York State court decisions.  Defendants also try to contend that the current version of the VGMVPL does not apply here, despite it clearly being the law under which Plaintiff asserted her claims, and further make weak arguments that the amendments to this plainly remedial statute cannot be applied retroactively.  Finally, the Corporate Defendants mistakenly contend that the conduct of their executives and employees cannot be imputed to them—failing to recognize that the relevant law clearly imposes direct liability on corporate entities, and further ignoring the substantial allegations in the Amended Complaint that

make clear that the Individual Defendants' wrongful actions were made possible by their use of the Corporate Defendants' name, influence, and premises.

Because each and every one of Defendants' arguments fail, this Court should deny their Motion to Dismiss, and permit this case to proceed to discovery.

## RELEVANT FACTUAL BACKGROUND

Plaintiff alleges that in 2003, when she was seventeen years old and in high school, she met Defendants Harve Pierre ("Pierre") and the Third Assailant at a lounge in Detroit, Michigan. Amended Complaint ("Am. Compl."), ECF 52 ¶¶ 18, 22-23.  Pierre complimented Ms. Doe and began to talk about his "best friend" and "brother" Sean Combs ("Combs").  *Id.* ¶ 24.  He told Ms. Doe that he and his friends, including the Third Assailant, were executives at Defendant Bad Boy Entertainment ("Bad Boy"), Combs's well-known recording label, and used his affiliation with Bad Boy and Combs to keep Ms. Doe interested in the conversation.  *Id.* ¶ 25.  Pierre repeatedly stated that Combs would love to meet her, and even went as far as to call Combs and put Ms. Doe on the line.  *Id.* ¶ 26-27.  On the phone call, Combs told Ms. Doe to join Pierre on a private jet to meet him in New York City.  *Id.* ¶ 27.  The individual defendants used not only their affiliations with Bad Boy as a means to facilitate the unlawful conduct to follow, but also their affiliations with Daddy's House Recording Studio in New York City, the studio famously owned and operated by Bad Boy and Combs, where Ms. Doe was enticed to meet Combs.  *Id.* ¶ 28.

Soon thereafter, Pierre, the Third Assailant, and another man escorted the young Ms. Doe to a private jet in Pontiac, Michigan, which flew them to Teterboro, New Jersey, where SUVs were waiting for them.  *Id.* ¶ 31-32.  The SUVs brought the group to Daddy's House.  *Id.* ¶ 34.  At the studio, Combs, Pierre, and the Third Assailant plied Ms. Doe with drugs and alcohol, causing her to become heavily intoxicated such that she could not have consented to sex.  *Id.* ¶¶ 38, 42.  Throughout

the evening, the Individual Defendants used the accoutrements of the studio to entice Ms. Doe to stay there and continue to drink alcohol and do drugs.  *Id.* ¶ 42.

While at the studio, Ms. Doe was gang-raped by Mr. Combs, the Third Assailant and Mr. Pierre, in that order.  *Id.* ¶ 43-50.  Pierre and the Third Assailant, employees and/or executives of Bad Boy, watched other Bad Boy executives and/or employees rape Ms. Doe, and did nothing to stop it.  In fact, they encouraged it.  *Id.* ¶ 49.  Combs used the fact of his ownership of Daddy's House and his title at Bad Boy to perpetrate and facilitate this unlawful conduct.  *Id.* ¶ 51.  The brutal sexual assault she experienced has left Ms. Doe with lifelong feelings of shame and fear.  *Id.* ¶ 54.

## ARGUMENT

## I.   THE VGMVPL IS NOT PREEMPTED BY THE CVA

### A.   The Relevant Laws at Issue

In 2000, the New York City Council adopted the Victims of Gender-Motivated Protection Law ("VGMVPL") to create a civil cause of action for a "crime of violence motivated by gender," and required that a claim must generally be asserted "within seven years after the alleged crime of violence motivated by gender occurred."   N.Y.C. Admin. Code §§ 10-1104-1105(a).  The law provides for specific types of relief, including compensatory and punitive damages, injunctive and declaratory relief, attorney's fees and costs, and other remedies as a court may deem appropriate. In 2022, the New York City Council amended the VGMVPL to revive VGMVPL claims that had already expired, for a two-year period, from March 1, 2023 to March 1, 2025.  *Id.*  As Defendants also note, the 2022 Amendment also changed the category of potential defendants liable under the law, from "individual" to "party," thereby opening up liability for non-individuals that "commit[ ], direct[ ], enable[ ], participate[ ] in, or conspire[ ] in the commission of a crime of violence motivated by gender."   Nothing about the Amendment changes the fact that the VGMVPL

3

constitutes its own cause of action, **_separate and apart from any common law or other statutory_**
**_claims_**, under which plaintiffs like Ms. Doe may bring claims.

The Child Victims Act ("CVA"), on the other hand, was enacted by the New York State
Legislature in 2019, reviving the statute of limitations for civil claims related to sexual offenses
committed against minors. The CVA revived previously expired claims, and initially allowed
claims to be commenced between August 14, 2019 and August 14, 2020, but extended the lookback
another year to August 2021, due in part to COVID-19. *See* CPLR § 214-g. Nowhere in the CVA
did the State Legislature evince an intent to provide an exclusive remedy for people who
experienced sexual assault as a minor, although it had the power to do so. In fact, the CVA did not
create any cause of action, much less a cause of action that would preempt the VGMVPL. To the
contrary, the CVA states that it applies "[n]otwithstanding any provision of law which imposes a
period of limitation to the contrary." *Id.* Indeed, the "notwithstanding" language that begins CPLR
§ 214-g makes clear that the State Legislature acknowledged that other limitations periods may
apply to claims that fall under the statute. The aim of the State Legislature was to make clear that
claims covered by the CVA would be revived notwithstanding the existence of any provision of
law containing a *more restrictive* limitations period. The CVA was not intended to, nor did it curtail
a plaintiff's ability to bring a timely claim under a law with a *less restrictive* limitations period.

Defying logic, Defendants attempt to contort the CVA, which does not provide for an
independent cause of action or grant the ability for a Court to award specific relief and damages,
into a law that somehow preempts the VGMVPL, which provides a substantive statutory cause of
action for gender-motivated violence. Instead, the CVA merely revives previously extinguished
causes of action for a finite period, provided the underlying conduct constitutes "a sexual offense

as defined in article one hundred thirty of the penal law." This truth is abundantly clear as noted by countless legal commentaries regarding the 2022 Amendment, for example:

> Though the VGMVPL amendment is a revival statute like the [Adult Survivor's Act, or "ASA"], the VGMVPL creates an independent cause of action under which a plaintiff has a right to sue, whereas the ASA only revives expired claims available under other laws. Because the VGMVPL creates its own cause of action, it provides for specific types of relief, including compensatory and punitive damages, injunctive and declaratory relief, attorneys' fees and costs, and other remedies as a court may deem appropriate. In contrast, the relief available under an action authorized by the ASA is limited to the remedies provided for under the primary law.[1]

(citations omitted). Following enactment of the CVA, the State Legislature enacted CPLR § 214-j, known as the Adult Survivors Act ("ASA") which parallels the CVA except that it applies to sexual offenses committed against persons 18 years or older at the time of the offense. *See* CPLR § 214-j.

That is, contrary to the mental gymnastics Defendants make in their motion, the CVA did not "revive" plaintiff's VGMVPL claims, as the VGMVPL is a separate stand-alone claim that has a separate stand-alone statute of limitations. As such, Defendants' argument that the CVA lookback of August 2019 to August 2021 preempts the VGMVPL 2022 Amendment makes no sense.

## B.   The First Department Decided that the VGMVPL is Not Preempted

### 1.   *Engelman v. Rofe*

Defendants summarily argue "New York state law trumps New York City law, without exception," and vaguely argue that the CVA covered the "field" of sexual assault law. That is simply not true.

---

[1]      *See* https://www.weil.com/-/media/mailings/employer_update_august-2022.pdf.

5

Significantly, binding precedent has already disposed of Defendants' unpersuasive and nonsensical argument. Incredibly, except for a footnote (addressed below), Defendants fail to acknowledge that in *Engelman v. Rofe*, 144 N.Y.S.3d 20 (1st Dep't 2021), the Appellate Division addressed the issue of state law preemption of the VGMVPL and held that it is not preempted by New York State law. In *Engelman*, the First Department held that the VGMVPL was not preempted by the statute of limitations extensions created in the CPLR, specifically, §§ 215(3) and 214(2). First, the court distinguished between the conduct targeted by the VGMVPL compared to that targeted by the CPLR, finding that:

> [T]he legislative intent of the VGM was to create a civil rights remedy or cause of action such as in [the federal Violence Against Women Act], rather than to extend the statute of limitations for a particular class of assaults as in the CPLR.

144 N.Y.S.3d at 25-26. Second, the court focused on the clear rule in New York that local antidiscrimination laws like those enacted by the New York City Council are generally not preempted by state law, noting that "[t]he VGM's construct is consistent with the City's broad policing power to enact legislation to protect its residents from discrimination, including gender-related violence." *Id.* at 25. Following these principles, the court in *Engelman* held that the VGMVPL was not preempted by the CPLR's limitations contained in § 215(3) and § 214(2). This was particularly true in light of CPLR § 201, which states that all of the times listed in CPLR Article 2 apply "unless a different time is prescribed by law." As the *Engelman* court held, therefore, "[i]nasmuch as the VGM itself provides a different time than that prescribed in CPLR 214(2), the time prescribed in the VGM controls." *Id*. at 26 (emphasis added).

In a footnote, Defendants nevertheless contend that *Engelman* does not apply here because the *Engelman* court did not specifically address the 2022 Amendment to the VGMVPL. But the Amendment just clarifies the statute of limitations relevant to the claim; indeed, the *Engelman*

6

court held that the VGMVPL is decidedly *not* a statute whose purpose was to extend the statute of limitations:

> Based on the foregoing, we find that the legislative intent of the VGM was to create a civil rights remedy or cause of action such as in VAWA, rather than to extend the statute of limitations for a particular class of assaults. Since the nature of the claim is for a civil rights violation (providing a remedy for those subjected to violence because of their gender), the seven-year limitations period provided in the Administrative Code is not preempted by the CPLR statute of limitations for assault claims.

144 N.Y.S.3d at 25-26. While the 2022 Amendment to the VGMVPL did have an impact on the relevant limitations periods, it is not fundamentally a statute created for the purpose of extending the statute of limitations, which the CPLR § 214-g (*i.e.*, the CVA) clearly is. The 2022 updates to the VGMVPL were amendments to an entirely separate, stand-alone civil cause of action. There is no reason not to apply the sound logic of *Engelman* to the Amendment, and therefore the Court should similarly find that the VGMVPL is not preempted by the CVA or any other CPLR limitations period. As such, this mandates that Defendants' motion should be denied in its entirety.

### 2.    Other Decisions Follow *Engelman*

*Engelman* is not the only decision that addressed Defendants' proposed preemption notion. The district court in *Doe v. Gooding*, No. 20 Civ. 06569 (PAC), 2022 WL 1104750 (S.D.N.Y April 13, 2022), addressed the same preemption argument proposed by Defendant. Importantly, this court similarly rejected the argument. In *Gooding,* the plaintiff commenced her action on August 18, 2020, asserting a single cause of action pursuant to the VGMVPL based on her allegation that the defendant had sexually assaulted her on August 24, 2013. The statute of limitations for bringing a claim under the VGMVPL is seven years, and thus she had filed timely. *See* N.Y. Code § 10-1105(a) ("A civil action under this chapter shall be commenced within seven years after the alleged crime of violence motivated by gender occurred."). The defendant in *Gooding* contended

that the action should be dismissed because the VGMVPL, a New York City statute, conflicted with CPLR § 215(3), a New York State law.  The court in *Gooding* held that the First Department's decision in *Engelman* was controlling precedent:

> The Court defers to the appellate court's holding that the VGM's seven-year statute of limitations is not preempted. The First Department in *Engelman* is the only Appellate Division to have considered the issue, and there is no indication that New York's Court of Appeals would decide otherwise.

*Gooding* at \*2 (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (instructing federal district courts to defer to state intermediate appellate courts unless there are "persuasive data" that the state's highest court would disagree)).  Further, the *Gooding* court held that *Engelman* reached the correct result, reasoning:

> [Defendant's] suggestion that the First Department overlooked principles of preemption law (that the lower court did not) is without merit.  To the contrary, *Engelman* rejected the exact argument that Defendant resurrects here:  that the CPLR implicitly preempts the VGM, even if it does not do so expressly.  The VGM has been on the books for over two decades since its passage in 2000, and Defendant has identified nothing that the state legislature has done during those decades—either expressly or implicitly—to preempt the VGM's statute of limitations or bring it under the ambit of the CPLR.

*Id.* at \*3 (citations omitted).[2]

**C.    *Bellino v. Tallarico* is Not Relevant Here**

Defendants rely heavily on Judge Kaplan's decision in *Bellino v. Tallarico*, in which Judge Kaplan cursorily determined—only in dicta as an alternative, secondary reason for granting defendants' motion to dismiss—that the VGMVPL's claim provision was preempted by the CVA.

---

[2]    The court in *Gooding* rejected the defendant's attempt to use a 2008 decision by a New York Supreme court, *Cordero v. Epstein*, 869 N.Y.S.2d 725 (N.Y. Sup. Ct. 2008) to argue that the plaintiff's delay in bringing her action violated defendant's Constitutional rights.

Judge Kaplan conducted no analysis supporting that decision, which was made following an *unopposed* motion to dismiss.  Regardless, in denying that plaintiff's later motion for leave to file an amended complaint, he clarified why the case before him was time-barred.  In *Bellino*, the plaintiff alleged that a crime of violence took place in 1975—as Judge Kaplan explained, because the VGMVPL went into place in 2000, it "was not enacted until 25 years after the alleged crime of violence occurred."  It is for that reason—not pre-emption—that the claim in *Bellino* was dismissed for failure to state a claim.

Here, the allegations set forth a crime of violence that took place in 2003—after the VGMVPL was enacted.  Ms. Doe's claim is therefore revived by the 2022 Amendment to the law, which opened up a two-year window for those claims to be brought in court.  Defendants' desperate reliance on one line of an entirely inapposite case is unavailing.

## II.    THE APPLICABLE VERSION OF THE VGMVPL PERMITS CORPORATE LIABILITY

In a further attempt to warp the plain language of the VGMVPL, Defendants attempt to argue that Plaintiff's claims are invalid because the Corporate Defendants would not have liability under the "original version of the VGM."  While that may be the case, that is wholly irrelevant, as Ms. Doe brings her claims under the *current* version of the VGMVPL, which plainly has a broader scope of potential defendants.  Plaintiff does not argue (nor does she need to argue) that the VGMVPL is applied retroactively.  Simply put, she brings claims under the current law, which permits claims to be brought against non-individual "parties."  All the cases Defendants cite concerning retroactivity are simply not relevant here, where the claims are within terms and statute of limitations set by the current, operative version of the VGMVPL.

Even if retroactivity were required here, the 2022 Amendment to the VGMVPL can and should be applied retroactively to gender-based violence that occurred after the enactment of the VGMVPL in 2000.

A court must generally apply "the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of Richmond*, 416 U.S. 696, 711 (1974). Further, while legislation is ordinarily presumed to be prospective, "remedial legislation should be given retroactive effect in order to effectuate its beneficial purpose." *In re Gleason (Michael Vee, Ltd.)*, 96 N.Y.2d 117, 122 (2001). "Remedial statutes are those designed to correct imperfections in prior law by generally giving relief to the aggrieved party." 97 N.Y. Jur. 2d Statutes § 10; *see also Matter of Asman v. Ambach*, 64 N.Y.2d 989, 991 (1985) (same).

"While these principles serve as guides, ultimately, the court must attempt to discern the legislative intent either from the particular words used or, barring that, from the nature of the legislation." *Posillico v. Southold Town Zoning Bd. of Appeals*, 219 A.D.3d 885, 888 (2d Dep't 2023). "Other factors in the retroactivity analysis include whether the Legislature has made a specific pronouncement about retroactive effect or conveyed a sense of urgency; whether the statute was designed to rewrite an unintended judicial interpretation; and whether the enactment itself reaffirms a legislative judgment about what the law in question should be." *Gleason*, 96 N.Y.2d at 122.

At the time of its passage, both the original VGMVPL and the 2022 Amendment were fashioned as remedial, giving rise to a presumption of retroactivity. The City Council certainly conveyed a sense of urgency when it acted in 2000. Indeed, it convened to consider legislation just nine days after the Supreme Court decision striking down the Violence Against Women Act

("VAWA").  New York City, Local Law Report No. 752-A (2000).  And both the original law and

the 2022 Amendment were slated to "take effect immediately after its enactment into law."  § 10-

1104, section 2.  *See Palin v. New York Times Co.*, 510 F. Supp. 3d 21, 27 (S.D.N.Y. 2020) (Rakoff,

J.) ("take effect immediately" language, coupled with remedial nature of law, convinced court to

give law retroactive effect).  Furthermore, the purpose of the Amendment was to create a two-year

look-back window to the VGMVPL and to extend its statute of limitations (*see* Introduction to

Legislation Text, Dkt. 56-5, Decl. of Jonathan Davis, Exhibit E at 1)—by clear necessary

implication, the Amendment in its entirety was intended to extend backwards.

The cases cited by Defendants to support their argument that the VGMVPL cannot be

retroactive—*Louis v. Niederhoffer* and *Bellino v. Tallarico*—are entirely inapposite, as in both

cases, the courts held that the VGMVPL was not retroactive to conduct *pre-dating the law's

enactment* in 2000.  Both cases concerned conduct that took place in the 1970s—decades before

the enactment of the VGMVPL.  These holdings simply do not apply here, where the alleged

conduct took place after the enactment of the relevant law.

As a result, the Corporate Defendants can plainly be held liable in this case.

## III.    THE CORPORATE DEFENDANTS ARE LIABLE BECAUSE THEY ENABLED SEXUAL ASSAULT

Defendants also argue that Plaintiff's claims against the Corporate Defendants fail because

in order to state a claim, Plaintiff needs to argue that the Individual Defendants' misconduct is

somehow "imputed" to the Corporate Defendants.  That is not so.

The unambiguous language of the operative version of the VGMVPL says that a case can

be brought against any party that "commits, directs, **enables**, participates in, or conspires in the

commission of a crime of violence motivated by gender" (emphasis added).  The simple meaning

of the word "enable" shows how the Corporate Defendants are plainly liable under the facts of the

11

Amended Complaint.[3]  According to the Oxford English Dictionary, "enable" means "to make possible or easy; also, to give effectiveness to (an action)."[4]  Because the Individual Defendants used their relationship with the Corporate Defendants to lure Ms. Doe to the studio, and because the studio and the record label plainly "made [it] possible" for the horrific assault of Ms. Doe to occur, the Corporate Defendants enabled the unlawful conduct and are therefore liable.

Even without this clear and direct theory of liability set forth in the VGMVPL, however, the Corporate Defendants are nevertheless liable.  As to Pierre and the Third Assailant, procuring Ms. Doe was in fact part of their employment—as made clear when Pierre flaunted his standing at Bad Boy and told Ms. Doe that Combs would "love her," Pierre and his co-employee were furthering their boss's desires and therefore doing "work" within the scope of their employment. Indeed, it was at Mr. Combs' direction and with his knowledge that Pierre and brought Ms. Doe to New York City to be gang raped.  As explained by the New York Court of Appeals:

> The test [for *respondeat superior liability*] has come to be whether the act was done while the servant was doing his master's work, no matter how irregularly, or with what disregard of instructions . . . **For, while clearly intended to cover an act undertaken at the explicit direction of the employer, hardly a debatable proposition**, it also encompasses the far more elastic idea of liability for any act which can fairly and reasonably be deemed to be an ordinary and natural incident or attribute of that act . . . And, because the determination of whether a particular act was within the scope of the servant's employment is so heavily dependent on factual considerations, **the question is ordinarily one for the jury** . . . That is not to say there are no useful guidelines for assessing whether the conduct of a particular employee, overall, falls within the permissible ambit of the employment. Among the factors to be weighed are: the connection between the time, place and occasion

---

[3]    As noted above, to the extent the current law needs to apply "retroactively," the VGMVPL 2022 Amendment presumptively does so.

[4]    Oxford English Dictionary.  *See also Black's Law Dictionary* (defining "enable" as "[t]o give power to do something; to make able"); *Merriam-Webster Dictionary* (defining "enable" as "to make able or possible").

> for the act; the history of the relationship between employer and
> employee as spelled out in actual practice; whether the act is one
> commonly done by such an employee; the extent of departure from
> normal methods of performance; **and whether the specific act was
> one that the employer could reasonably have anticipated**.

*Riviello v Waldron*, 47 N.Y.2d 297, 302–03 (1979) (emphasis added, internal citations and quotations omitted).

Further supporting a finding of corporate liability is the fact that there is ample evidence that sexual assault was, in fact, a regular part of Bad Boy's business. Contrary to the cases in which sexual misconduct was outside the scope of employment—for example, for a doctor in a hospital or a teacher in a school—for an executive or employee of Combs's companies, including Bad Boy and Daddy's House, sexual misconduct was part and parcel of the job. As detailed in the litany of lawsuits against Combs, his companies, and his associates, Combs regularly used his corporations and the influence of his record label to sexually assault others.

- In *Ventura v. Combs et al.*, 23-cv-10098 (S.D.N.Y.), plaintiff Casandra Ventura alleged that Combs signed her to Bad Boy Records and in doing so, lured her into a violent and abusive relationship. In doing so, Combs used the power and resources of his corporate entities not only to keep Ms. Ventura captive to his desires, but to ensure that his malfeasance was supported and remained covered up—as alleged, Bad Boy Entertainment executives regularly witnessed and secreted Combs' abuse of Ms. Ventura.

- In *Dickerson-Neal v. Combs*, plaintiff Joi Dickerson-Neal alleged that Combs took advantage of her desire to gain a foothold in the music industry, using the influence of his record label and his willingness to place her in a music video with him to drug and assault the plaintiff, after which he filmed the sex act and showed it to others who worked for his corporations.

- In *McKinney v. Combs et al.*, 24-cv-03931 (S.D.N.Y.), plaintiff Crystal McKinney similarly detailed how she was lured to Combs's Daddy's House Recording Studio by Combs' promises of career advancement with his label, Sean John Clothing, LLC. At the studio, Combs drugged and sexually assaulted McKinney—in the same bathroom in which Ms. Doe alleges Combs, Pierre, and the Third Assailant assaulted her that very same year.

- And in *Lampros v. Combs et al.*, 154859/2024 (N.Y. Supreme), plaintiff April Lampros alleged that Combs promised mentorship and the promise of introductions to music and fashion industry executives, using his standing in his corporations, to rope her into multiple interactions that resulted in sexual assault.

These examples in the public record indicate that far from being a corporation whose business was focused on music, Sean Combs's corporations—including Defendants Bad Boy and Daddy's House—were in the very business of sexual misconduct.   Thus, the Individual Defendants' actions are plainly imputable to the Corporate Defendants, separate and aside from the Corporate Defendants' direct liability for enabling sexual assault under the VGMVPL.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully submits that Defendants' motions must be denied in their entirety.

Dated: June 7, 2024
      New York, New York          Respectfully submitted,

               **WIGDOR LLP**

By: _____
               Douglas H. Wigdor
               Michael J. Willemin
               Meredith A. Firetog

               85 Fifth Avenue
               New York, New York 10003
               Telephone: (212) 257-6800
               Facsimile: (212) 257-6845

               dwigdor@wigdorlaw.com
               mwillemin@wigdorlaw.com
               mfiretog@wigdorlaw.com